HERNÁNDEZ, DEMANDANTE, APELANTE Y APELADO, *v.* LOUBRIEL, DEMANDADO, APELADO Y APELANTE.

APELACIÓN procedente de la Corte de Distrito de San Juan, Sección 1ª., en causa sobre reivindicación y daños y perjuicios.

No. 1239.—Resuelto en julio 30, 1915.

REIVINDICACIÓN—DAÑOS Y PERJUICIOS—EXAMEN DE LAS PRUEBAS—PASIÓN, PREJUICIO O PARCIALIDAD—ERROR MANIFIESTO.—Examinadas las pruebas practicadas en este caso consistentes en planos, peritos, escrituras y declaraciones de testigos, *se resolvió:* que existe un verdadero conflicto en cuanto al extremo de la reivindicación; que los daños y perjuicios no han sido suficientemente probados, conclusión a que también había llegado el juez inferior, y que no habiéndose demostrado que el juez de distrito actuara movido por pasión, prejuicio o parcialidad, o que cometiera algún error manifiesto, su sentencia debe confirmarse.

Los hechos están expresados en la opinión.

Abogado del demandante: *Sr. José E. Benedicto.*

Abogado del demandado: *Sr. Enrique Lefebre.*

EL JUEZ ASOCIADO SR. DEL TORO emitió la opinión del tribunal.

El presente es un pleito sobre reivindicación de una faja de terreno e indemnización de daños y perjuicios.

La demanda en lo pertinente, dice así:

"2. Que el demandante es dueño de la siguiente finca:

" 'Urbana: Solar sito en el barrio de Puerta de Tierra de esta ciudad, marcado con el número 87, en colindancias por el norte en 22 metros con el solar número 86 de Angela Ayuso, Dolores Ramos y la Sucesión Iglesias; por el sur en 22 metros con la calle de San Agustín; por el este en 25 metros con terrenos del Estado y por el oeste en 25 metros con parte que fué del mismo solar número 87 de Irene Nogueras, hoy de Rafael Loubriel Cueto. Es de forma rectangular y mide quinientos cincuenta metros cuadrados.'

"3. Que adquirió el descrito solar por compra a don Julio César González y su esposa doña Carmen Daubón, el 17 de noviembre de 1911, según escritura pública debidamente inscrita en el registro de la propiedad.

"4. Que hasta hace siete meses más o menos, el demandante y los anteriores dueños de la descrita finca la han poseído quieta, pública y pacíficamente, sin interrupción de nadie por más de treinta años, a título de dueños.

"5. Que el demandado Rafael Loubriel Cueto es asimismo dueño de un solar en el barrio de Puerta de Tierra de esta ciudad, situado al oeste del solar del demandante, con el que colinda por dicho lado.

"6. Que la línea divisoria de ambos solares existía una cerca puesta desde hace más de veinte años, la que ha sido destruída por el tiempo, no existiendo en la actualidad, pero quedan aún restos de la misma, indicando el verdadero límite o línea divisoria entre ambos solares.

"7. Que el demandado sin la autorización del demandante y en contra de la voluntad de éste, levantó una cerca dentro del solar del demandante a una distancia de un metro treinta centímetros del sitio en que estaba la antigua cerca; separando de la finca del demandante una faja de terreno, situada en la colindancia oeste de aquélla, de un metro treinta centímetros de frente por veinte y cinco metros de fondo, situada o comprendida entre la finca del demandado y el resto del solar del demandante; la que para mayor claridad se describe en la siguiente forma:

" 'Faja de terreno en el barrio de Puerta de Tierra de esta ciudad de un metro treinta centímetros de frente por 25 metros de fondo, colindante por el sur con la calle de San Agustín; por el norte con

solar número 86 de Angela Ayuso; por el este con terrenos de Guillermo Hernández y por el oeste con solar del demandado Rafael Loubriel Cueto.'

"8. Que desde hace siete meses más o menos en que el demandado levantó la indicada cerca, está poseyendo la faja de terreno antes referida, sin título alguno para ello, en contra de la voluntad del demandante, y negándose a reconocerle como su único y legítimo dueño.

"9. Que el demandante empezó a edificar en el descrito solar de su propiedad una casa para vivienda, cuya obra le ha hecho suspender el demandado, considerándose como dueño de la descrita faja de terreno.

"10. Que la paralización de la obra antes referida, ha ocasionado al demandante daños y perjuicios en la pérdida de materiales, destrucción o pérdida de las obras ya realizadas, demora en la terminación de la fábrica y pérdida de los alquileres de la misma casa durante el tiempo en que la obra ha sido paralizada.

"11. Que el demandante estima en la suma de ochocientos dollars ($800) los daños y perjuicios que le ha originado el demandado por los conceptos antes expresados.

"12. Que el demandado sabía perfectamente que la aludida faja de terreno era de la exclusiva pertenencia del demandante, pues desde los primeros momentos en que pretendió tener derecho alguno sobre ella, el demandante, con conocimiento del demandado hizo practicar por un ingeniero una mensura y deslinde de su solar, de las cuales resultó que el indicado terreno era del demandante; y el demandado a pesar de conocer perfectamente el resultado de dicho deslinde y mensura, realizó los actos antes expresados."

El demandado contestó en la siguiente forma:

"1°. Admite los hechos 1°., 2°., 3°. y 5°. de la demanda.

"2°. Niega el hecho 4°. en lo que se refiere a que haya sido perturbado en su posesión por el demandado.

"3°. Niega los hechos 6, 7 y 8.

"4°. En cuanto a los hechos 9, 10, 11 y 12, el demandado alega que la obra a que alude el demandante, que fué paralizada, no es la obra en construcción, sino la parte de trabajos que ejecutaba en el solar propiedad del demandado, y que lo fué, no por el demandado, sino por una—de la corte, sólo referente a lo que el demandante hiciera dentro de la propiedad del demandado."

Como materia nueva alegó el demandado, en resumen, que en 28 de marzo de 1910, adquirió por compra a su abuelo don José Reyes Rivera, la siguiente finca:

"Urbana: Solar, sito en el barrio de Puerta de Tierra, de esta ciudad, que tiene catorce metros de frente por veinte y nueve de fondo, colindando por el norte, con doña Irene Nogueras; por el sur, con la calle de San Agustín; por el este, con solar de don Guillermo Hernández, el demandante; y por el oeste, con doña Belén Dávila de Rengel."

Que desde que compró, los límites de su solar se encuentran demarcados y el demandado nunca ha corrido la cerca que separa su solar del del demandante.

Que hace más de treinta años que la cerca entre ambos solares existe en el mismo sitio en que hoy está, habiéndose construído en el solar del demandante una casa hace siete años cuya escalera ocupa algo de la faja reclamada por el demandante, y

Que por razón de la existencia de la cerca, la acción del demandante para reivindicar está prescrita.

Celebrada la vista, la corte dictó sentencia declarando con lugar la demanda en cuanto a la reivindicación y sin lugar en cuanto a los daños y perjuicios. Ambas partes apelaron para ante esta Corte Suprema.

Examinaremos primero la apelación del demandado, que envuelve la cuestión fundamental de reivindicación, y luego la apelación del demandante, que se limita a la materia de daños y perjuicios.

La prueba del demandante consistió en documentos, planos, peritos, y testigos, y la del demandado también en documentos, planos, peritos y testigos. Además, el juez sentenciador practicó una inspección ocular del lugar en que se encuentran situados los solares del demandante y del demandado.

Apreciando dicha prueba, el juez sentenciador al emitir la opinión que sirvió de base a su sentencia, se expresó así:

"Después de un detenido estudio de la prueba practicada y de un examen del lugar en donde estos solares están radicados, no cabe

ninguna duda de que la colindancia este del solar del demandado está dentro del solar del demandante, pero la razón de ésto está en que la casa situada en el ángulo sud-oeste del plano del Departamento del Interior, haciendo esquina con las calles de San Agustín y de San Juan Bautista, no ocupa su verdadero sitio, sino que está construída un metro treinta centímetros más hacia el este del punto exacto sud-oeste marcado en el dicho plano del Departamento del Interior; y tomando como base para la medición de toda esa línea sud de solares, frente a la calle de San Agustín hacia el este, la esquina de la casa construída en el ángulo sud-oeste del plano del Departamento del Interior, antes dicho, es claro que al solar del demandado le falte un metro treinta centímetros que pretende él encontrar en el solar del demandante; pero no es en el ángulo sud-oeste de la casa construída en la esquina de las calles de San Agustín y de San Juan Bautista en donde debe empezarse la medida lineal de todos esos solares que dan frente a la calle de San Agustín, sino en el punto marcado en el plano del Departamento del Interior, o sea el ángulo sud-oeste del solar marcado en dicho plano con el número 81, y haciéndose así, no hay ninguna diferencia entre las medidas que expresan los títulos de cada uno de los propietarios de solares colindantes con la calle de San Agustín.''

Hemos examinado también cuidadosamente la prueba practicada y en ella hemos encontrado tres elementos distintos por virtud de los cuales puede llegarse a la solución del problema planteado, a saber: 1, los planos y los peritos; 2, las escrituras, y 3, las manifestaciones de los testigos.

Veamos los planos y lo dicho por los peritos. Así el solar del demandante como el del demandado pertenecieron a la hacienda y están situados en el barrio extramuro de Puerta de Tierra entre las líneas 2ª y 3ª defensiva de la plaza de San Juan. Allá por el año de 1879 se levantó un plano de dicho barrio, copia del cual, proporcionada por el Departamento del Interior e introducida como prueba, tenemos a la vista. El solar del demandante es parte del marcado en dicho plano con el número 87 y ocupa el extremo oriental con frente al Sur. El solar del demandado se formó con parte del solar número 87 y del contiguo marcado con el número 85 también con frente a la calle de San Agustín, y con parte de otros de

los solares cuyo frente da a la Carretera Central. De acuerdo con este plano explicado por los peritos, es evidente que en vez de diez metros de frente por veinte y cinco de fondo que fueron los vendidos por el dueño del solar número 87 al antecesor del demandado, el demandado ocupa en la actualidad once metros treinta centímetros de frente por veinte y cinco de fondo. La anterior conclusión se confirma además por el examen de los otros planos presentados como prueba.

Examinemos las escrituras. Las del demandante expresan que al demandante corresponden veinte y dos metros de frente por veinte y cinco de fondo. Esto no es conforme con la realidad actual. Aceptando como punto de partida la cerca divisoria de los solares del demandante y del demandado tal como se encontraba al comenzar este pleito, el demandante tiene un metro treinta centímetros menos de lo que indican sus títulos. Las del demandado asignan al solar de que es dueño, catorce metros de frente por veinte y nueve de fondo. Esto es conforme con la realidad. Partiendo de la cerca que actualmente divide los solares del demandante y del demandado, éste sólo tiene lo que le marcan sus títulos. ¿Dónde está, pues, el metro treinta centímetros que falta? Volviendo al examen de los planos y de la prueba pericial, la pregunta se contesta afirmando que esa diferencia viene desde el extremo occidental de la manzana de que los solares del demandante y del demandado forman parte. Veamos lo que dice el ingeniero Enrique Castro González con respecto al deslinde que, a instancia del demandante y con autorización de la Corte, practicara:

"Teniendo a la vista los títulos de ambos propietarios así como también el plano parcelario de esos terrenos levantado por el Gobierno Español para la venta de dichos solares a particulares, llegó al conocimiento de que para poder localizar con toda precisión la línea divisoria entre el solar del señor Hernández y el del señor Loubriel, era de todo punto indispensable empezar la mensura desde la esquina de esa cuadra que queda al oeste de los referidos solares; lo que efectuó de la siguiente manera:

"Esta cuadra se compone de los solares números 81, 83, 85 y 87,

el 87 (debe decir 81), es el que forma la esquina oeste de ella y tiene un frente a la calle de San Agustín de 20 metros; el 83 y el 85 tienen 30 metros cada uno y el 87 tiene 32 metros, de suerte que la suma de las dimensiones de los cuatro solares por la calle de San Agustín arroja un total de 112 metros; como el solar del señor Hernández consta de 22 metros de frente a esa calle y constituye la parte oriental del solar número 87, que es el último, debe encontrarse la línea divisoria de este solar con el del señor Loubriel a 90 metros de la esquina.

"El punto de partida de la esquina está perfectamente definido, pues este solar número 81 está cercado por el lado de la calle que corre de norte a sur con un muro de mampostería y comprobada su situación con relación a la prolongación de esa calle al norte de la carretera, resultó perfectamente en línea con ella.

"Partiendo de la mensura de este punto de la esquina de la cuadra, se llegó a la cerca que actualmente existe como divisoria entre el solar del señor Hernández y el del señor Loubriel con una distancia de 91.30 metros, y como la distancia que debe existir es de 90 metros, resulta que el señor Loubriel ocupa del solar del señor Hernández una zona de terreno de 1 m. 30 cents. de ancho.

"Colocado el taquímetro en este punto se levantó una perpendicular a la línea del frente del solar para trazar su fondo, midiéndose en 25 metros, y se vió que la cerca continuó invadiendo la propiedad del señor Hernández en toda su extensión, resultando así la zona invadida de 1.30 metros de ancho por 25 metros de fondo.

"Los puntos que determina la verdadera línea divisoria entre ambos solares quedaron marcados sobre el terreno.

"Un dato que sirvió como comprobación de la eficiencia del procedimiento usado, es que al colocarse el taquímetro en el ángulo sudoeste del solar del señor Hernández, en la colindancia con 'El Pueblo de Puerto Rico,' para trazar el lado este de dicho solar, la línea pasó a una distancia de quince centímetros hacia el oeste del lado este del solar número 86 que es el que le queda al norte."

Estudiemos la prueba de testigos. Es completamente contradictoria. Si creemos a los del demandante, tendremos que concluir que existió una cerca antigua que daba al solar del demandante las exactas dimensiones que le asignan las escrituras y los planos, existiendo aún vestigios de dicha cerca; que no sólo existió la cerca, sino que al lado de ella, dentro del metro treinta centímetros que se reclaman, se levantaba

un ranchón del demandante que fué luego destruído, y que el demandado en una fecha que no se precisa con toda exactitud pero que desde luego puede asegurarse que no fué anterior al 1894, corrió la cerca desde el sitio en donde se encontraba, hasta introducirse un metro treinta centímetros en el solar del demandante.

Por el contrario, si damos crédito a los testigos del demandado, tendremos que concluir que éste no corrió la cerca; que la cerca se encontró siempre donde se encuentra ahora y por tanto que el demandado y sus antecesores habían venido disfrutando de la posesión del solar que hoy tienen por un período de tiempo suficiente tal vez para adquirir por prescripción.

Alguien tuvo que faltar a la verdad. No pueden ser ciertas a la vez las declaraciones de los testigos del demandante y las de los del demandado sobre el extremo de la cerca. Existe, pues, un verdadero conflicto que fué resuelto por el juez de distrito en su sentencia en pro del demandante.

Se ha dicho que el juez sentenciador no dió a la cuestión de posesión en este caso la atención debida. Hemos leído cuidadosamente su dictamen y aunque en verdad parece que el juez consideró las resultancias del plano de urbanización con arreglo al cual se vendieron por el primitivo dueño, la hacienda, los solares, como decisivas tal vez de la contienda ante él suscitada, no puede asegurarse que no tomara en consideración las declaraciones de los testigos.

Es este un pleito que no deja satisfecho, ciertamente, al juzgador. Pero es necesario decidirlo y en el estado en que se encuentra ante nosotros, atendidas todas las circunstancias concurrentes, tiene que merecernos crédito la apreciación del juez que lo falló en primera instancia, oyendo personalmente declarar a los testigos y personalmente también inspeccionando el lugar donde la faja de terreno en disputa se encuentra situada.

No se ha demostrado que el juez de distrito actuara movido por pasión, prejuicio o parcialidad, o que cometiera algún

error manifiesto, y la sentencia apelada, en cuanto al extremo de la reivindicación, debe confirmarse.

También debe confirmarse a nuestro juicio en cuanto al extremo de los daños y perjuicios. El juez sentenciador, en su opinión, se expresa así: "Los daños y perjuicios que el demandante alega haber sufrido, no han sido suficientemente demostrados." Hemos examinado la prueba y tampoco hemos encontrado una demostración cumplida.

Deben declararse sin lugar los recursos interpuestos y confirmarse en todas sus partes la sentencia apelada.

*Confirmada la sentencia apelada.*

Jueces concurrentes: Sres. Presidente Hernández y Asociados Wolf, Aldrey y Hutchison.